MARY E. JOHNSON

*v.*

JAMES ASKEY *et al.*

*Opinion filed April 18, 1901.*

1. WILLS—*entire will should be considered in light of surrounding circumstances.* To ascertain the intention of the testator the entire will should be considered in the light of all the circumstances surrounding the testator at the time the will was made.

2. SAME—*when technical construction of words should not prevail.* A technical construction of words and phrases, although *prima facie* the one which should prevail, will not be carried to the extent of defeating the obvious general intention of the testator, particularly where the will is drawn by a person unacquainted with the precise technical force of the legal formulas employed by him.

3. SAME—*will construed as passing life interest only.* A daughter, who is the only child, takes but a life interest under a will giving her all the testator's real and personal property, to be held in trust, she to have the income from all said properties annually, after the payment of all necessary expenses in managing the estate, and providing that if she should die without issue the property should "revert back to" the "heirs" of the testator and his wife, or if she died leaving issue, said heir or heirs should inherit the estate, since the words "revert back" must be read "go to," and the "heirs" of the testator and his wife regarded as those answering that description at the death of the daughter without issue.

4. SAME—*court will carry out testator's intention to postpone vesting of remainder.* If it clearly appears, from the entire will, that it was the intention of the testator that the remainder should not vest at the time of his death but at the period of distribution, such intention will be carried out by the courts.

· 5. SAME—*effect where life tenant is sole heir and remainder is given to "heirs" of testator and his wife.* Where there is a gift to a person for life with remainder to the "heirs" of the testator and his wife, and the person taking the life estate is the sole heir of the testator and his wife at the time of his death, the remainder will be considered as given to the persons answering the description of heirs of the testator and his wife at the termination of the life estate.

6. SOLICITORS' FEES—*when provision for solicitors' fees is improper.* A provision in a decree for the defendants in a will case requiring the complainant's trustee to pay out of the funds in his hands as trustee a certain sum for solicitors' fees to the counsel for the defendants, is improper, where the testimony upon which the allowance was based was as to the value of the services rendered by both

counsel to all of the defendants, and not to the trustee alone, who defended as executor and trustee and as an heir of the testator, with other defendants, if complainant was excluded as sole heir.

7. SAME—*trustee is entitled to solicitor's fee for defending as trustee.* Where it is the duty of a trustee to defend a suit in his representative capacity he is entitled to have his solicitor's fees in such behalf paid out of the body of the estate.

APPEAL from the Circuit Court of Stephenson county; the Hon. JAMES SHAW, Judge, presiding.

CYRUS HEREN, C. B. MORRISON, and J. C. SEYSTER, for appellant.

HENRY C. HYDE, for appellee James Askey, trustee.

OSCAR E. HEARD, for appellees James Askey and Anthony Smith.

Mr. JUSTICE HAND delivered the opinion of the court:

This is a bill in chancery filed by the appellant in the circuit court of Stephenson county, against the appellees, for a construction of the last will and testament of Roan Johnson, deceased.

Roan Johnson, who had resided in said county for many years prior thereto, died on August 27, 1895, leaving a last will and testament, bearing date January 13, 1894, which, in part, is as follows:

"*First*—It is my will that my funeral expenses and all my just debts be fully paid.

"*Second*—I give, bequeath to my beloved daughter, Mary E. Johnson, all my real estate and personal property, to be held in trust, she to have the income from all said properties annually after the payment of all necessary expenses in managing and caring for said estate.

"*Third*—Should my daughter die without issue, it is my wish that said estates, of every kind and nature soever, shall revert back to the heirs of myself and my wife, Elizabeth Johnson, deceased, as the law provides.

"*Fourth*—Should.my daughter die with issue, said heir or heirs shall inherit the estate herein given to my daughter.

"*Fifth*—I would hereby appoint my nephew, James Askey, of Rock Grove, Illinois, as trustee, to care for said estate as provided by this will.

"*Lastly*—I hereby nominate and appoint my nephew, James Askey, of Rock Grove, Illinois, to be the executor of this my last will and testament, hereby revoking all former wills by me made."

At the time of the execution thereof the testator was seventy-six years of age, was in feeble health and understood he could not recover. His wife, Elizabeth, died some fourteen years prior to the execution of the will, and Roan Johnson never re-married. The appellant, Mary E. Johnson, is the only child of said Roan and Elizabeth Johnson. At the time of the execution of the will she was forty-five years of age and has never married. Subsequent to the death of her mother she was the house-keeper of her father, the family consisting of herself and father only. She is uneducated, not possessed of average mental capacity, inexperienced in business matters, and wholly unfit to care for, preserve and manage an estate of the size of that left by her father. At the time of his death Roan Johnson left three improved farms located in said county, aggregating in size 417 acres, of the value of $22,000, a house and lot in the village of Dakota of the value of $1000, and personal property of the value of $4747.69. He left no debts other than such as were incurred during his last illness, amounting only to a few dollars. The will was duly admitted to probate, and James Askey qualified as executor and entered upon the discharge of his duties as executor and trustee, and as such is now in control of said estate. From his appointment to the present time the appellant has received the net income of said estate. The defendants to the bill are James Askey, as executor and trustee,

and all persons who would have been the heirs of Roan Johnson, deceased, and Elizabeth Johnson, had Mary E. Johnson not been living at the time of the death of Roan Johnson.

The case was heard upon bill, answer, replication and the master's report, and a decree entered construing the will and holding the appellant not to be entitled to the possession of said estate or to be the absolute owner thereof, but only entitled to the net annual income thereof during her natural life, from which decree she has prosecuted an appeal to this court, and contends under the proper construction of said will she is the absolute owner of said estate, subject only to the payment of the debts of Roan Johnson, deceased.

The rule is well settled that in construing a will the intention of the testator must control, and to ascertain such intention the entire will should be considered in the light of all the circumstances surrounding the testator at the time the will was made. (*Taubenhan* v. *Dunz*, 125 Ill. 524; *Dickison* v. *Dickison*, 138 id. 541; *Perry* v. *Bowman*, 151 id. 25; *Young* v. *Harkleroad*, 166 id. 318; *Phayer* v. *Kennedy*, 169 id. 360; *Ransdell* v. *Boston*, 172 id. 439.) If this rule is kept in view we think the plan and scope of this will entirely plain, and that it is evident therefrom the testator intended his daughter, Mary E. Johnson, should enjoy the net income of his estate during her natural life, and that James Askey manage the same for her, she being incompetent; and that in the event his daughter should die leaving a child or children, or the descendants thereof, he desired his estate to then go to such child or children, or the descendants thereof, but if she died without leaving her surviving a child or children, or the descendants thereof, he then desired his estate to be equally divided between such persons as would be his heirs and his wife's heirs at the time of the death of his daughter. The words in the second clause, "I give, bequeath to my beloved daughter, Mary E. Johnson, all my

real estate and personal property," standing alone, are sufficiently broad to give her the entire estate absolutely. When such words are taken in connection with the words in the same clause, "she to have the income from all said properties annually after the payment of all necessary expenses in managing and caring for said estate," and the third and fourth paragraphs of the will, it is apparent the testator never intended Mary E. Johnson to take any interest in said estate other than for the period of her natural life, as after her death the estate is disposed of whether she died with or without issue, and such disposition is inconsistent with the view that the absolute estate had already been given to her. It is therefore manifest that Mary E. Johnson took only a life interest in said estate.

The will in this case was drawn, not by a man learned in the law, but by a merchant, who seems to have thought in order to make a good will it was necessary for him to use certain technical words of the meaning of which he had but little knowledge, a fair illustration of which is the clause, "shall revert back to the heirs of myself and my wife, Elizabeth Johnson, deceased, as the law provides," found in paragraph 3, which has led to much discussion in this case. In the case of *Blackmore* v. *Blackmore*, 187 Ill. 102, it is said (p. 108): "A technical construction of words and phrases, although *prima facie* the one which should prevail, will not be carried to the extent of defeating any obvious general intention of the testator, since wills are often prepared by those wholly unacquainted with the precise technical force of legal formulas, and who, from a consciousness of such deficiency, often exert themselves to drag in such phrases wherever they suppose they would probably have been adopted by an experienced draughtsman." The words "shall revert back" should be read "shall go to," as it would be impossible for the estate to revert to persons who had never had any interest therein; and the word "heirs" evidently

does not refer to the appellant, but to a class consisting of more than one person.   To hold the word "heirs" refers to appellant would be to hold that the testator intended to give to her an estate during her life and then upon her death to give to her the fee.   (*Abbott* v. *Bradstreet*, 3 Allen, 587; *Fargo* v. *Miller*, 150 Mass. 225; 22 N. E. Rep. 1003; *Welch* v. *Brimmer*, (Mass.) 47 N. E. Rep. 699; *Bailey* v. *Bailey*, 25 Mich. 185; *Rusing* v. *Rusing*, 25 Ind. 63.) In *Abbott* v. *Bradstreet*, *supra*, on page 591 it is said: "If there is a gift to a person for life, with remainder to the testator's next of kin, and the person taking the life estate is the sole next of kin at the death of the testator, the remainder will be considered as given to the persons answering the description at the termination of the estate for life.—*Jones* v. *Colbeck*, 8 Ves. 38; *Long* v. *Blackal*, 3 id. 486."

By said clause it was the evident intention of the testator that in case his daughter died without leaving her surviving a child or children, or the descendants thereof, his estate should then go to the persons who would then be his heirs and his wife's heirs.   While the law favors the vesting of remainders, and will fix the time at which they vest at the time of the death of the testator rather than at the period of distribution, where it clearly appears, from the entire will, that it was not the intention of the testator that the remainder should vest at the time of his death but at the period of distribution, such intention will be carried out by the courts.   Here there will be no persons in existence answering the description "heirs of myself and my wife" until after the death of appellant, at which time the estate will vest in such heirs.

This case is not controlled by the case of *Kellett* v. *Shepard*, 139 Ill. 433, as in that case the testator left more than one heir him surviving, and there was nothing to show that the testator did not intend the remainder to vest, immediately upon his death, in his heirs him then surviving, while here, as we have seen, it is apparent

that the testator intended that the estate should be distributed among the persons who would be his heirs and his wife's heirs at the time of his daughter's death, if she died without leaving a child or children or the descendants of such child or children her surviving,—*i. e.*, one-half of the estate should go to his brothers and sisters and their descendants, and the other half to his wife's brothers and sisters and their descendants. To hold otherwise would be to destroy the obvious general intention of the testator as manifested by his will.

The provision of the decree requiring the appellee Askey, as trustee, to pay out of the funds in his hands, as such trustee, the sum of $1200 as and for the reasonable value of the services of O. E. Heard and H. C. Hyde, solicitors in the cause, must be reversed. Mr. Hyde testified he was "of counsel for the defendants in this case, and particularly for the executor of the will, and that Mr. Heard is the other counsel for said defendants in this case." The witnesses who testified as to the value of such services gave their opinions as to such value of the services rendered by both counsel to all the defendants in the cause. The appellee Askey appeared in two relations in the cause,—*i. e.*, as executor and trustee and as heir-at-law of said Elizabeth Johnson, if the appellant be excluded as the sole heir of said Elizabeth Johnson. The other defendants to the bill defended as heirs of said testator and said Elizabeth Johnson, if the appellant be excluded as the sole heir of the testator and said Elizabeth Johnson, and the services of counsel for which the said solicitors' fees were allowed were, in part, for the defendants other than the trustee and to subserve the interests of such other defendants. It was the duty of James Askey to defend the suit in his representative capacity, and so far as he has incurred liability in so doing, as executor or trustee, in the employment of counsel, he should be allowed to pay such counsel their reasonable

solicitors' fees, the same to be fixed by the court and paid out of the body of the estate.

The decree, otherwise than as to the provision for the solicitors' fees, must be and is affirmed, and as to such provision the decree is reversed and the cause remanded for further proceedings in accordance with the views herein expressed. The costs in this court will be paid as follows: The appellant will pay two-thirds thereof, and the appellees, in their individual capacity, the remainder.

*Reversed in part and remanded.*